In Special Term—STORER, J. presiding.

### WILLIAM F. BOYD vs. STEAMBOAT FALCON.

A claim for unadjusted salvage, cannot be sustained in a court of common law; under the Common Carrier Act, recourse must be had to the Admiralty.

When a service is rendered for the benefit of the masters or owners, etc., of a steamboat, and for the preservation of freight, if the claim can be maintained in a court of common law, against them, it may be maintained against the *boat itself*,

under the Common Carrier Act; and the fact that the services were not rendered *on* 'he boat will not affect the right of recovery.

Where a number of salvors are engaged in saving wrecked articles, and make a *joint* agreement with the master or owners of the boat, for a specific sum per article, one of the salvors cannot maintain an action for his undivided share against the master or owner, but all must join in the action.

Amendments, however, in such case will be allowed under the Code very liberally.

This case was submitted to the court, upon the following statement of facts:

In December 1851, the steamboat Falcon, while on her voyage from Cincinnati to New Orleans, grounded on a bar, at Diamond Island, in the Ohio river. The weather was very cold, and the ice running fast, which endangered the safety of the boat; and the officers, finding it impossible to get the boat off without lightening her, threw over several hundred ploughs on the bar, in shoal water. The boat was got off, and secured near by. On the next day, the plaintiff, and four others, fished up three hundred and thirty of the ploughs, and kept possession of them under a claim for salvage. The salvors were exposed to very inclement weather, and performed their work, for the most part, in the ice. The captain did not employ them, but saw them at work without forbidding them, nor did he offer them any reward.

The salvors, having the property in possession, refused to give it up, unless paid a sum of money which the captain considered exorbitant, who, thereupon, sued out a writ of replevin, under which, the sheriff of the adjoining county, in Indiana, took possession of the goods. At this stage of the proceedings, an arrangement was made, by which the property was given up to the captain; he agreeing to pay the salvors, at the rate of twenty-five cents for each plough saved.

After the property was surrendered, some difficulty oc-

curred as to the manner of payment, and the boat left, without remunerating the salvors.

The salvors now seek to abandon the contract, and ask to recover, as salvage, one half the value of the property saved.

Four other suits, by the other salvors, are pending; which, by agreement of counsel, are to abide the event of this.

The suit was defended upon several grounds, which appear in the opinion of the Court.

Storer, J.

It is clear that a claim for unadjusted salvage, cannot be sustained in this form of action. The provisions of the law, under which this suit is brought, embrace no such demand. The proper determination of such a claim, can alone be had in the admiralty, where all the parties interested can be heard, and where all who wish to defend, would be bound to take notice of the proceedings. That tribunal could properly apportion the amount to be paid to the several parties, who may claim to have expended labor in rescuing property abandoned, or in great jeopardy; and the remuneration to be awarded, would depend upon the peril encountered, skill exerted, and time spent in the work. It will not be measured by a *per diem* allowance, but upon the liberal discretion of the Court, not only as a reward for courage in the hour of danger, but as an incentive for the preservation of property in imminent danger, by all who are embarked in a common enterprise.

*Abbot on Shipping*, part 3, chap. 8, sec. 17; 3 *Kent's Com.* 245; 2 *Mason*, 319.

If the demand in this suit, was for salvage merely, we could not permit a recovery. The property, however, has

been received by the boat from the salvors; they have parted with their lien; a contract to pay a specific sum has been made, on the faith of which, the property has been surrendered. It is immaterial then, whether the work, in saving the property, was performed at the request of the Captain, or whether the salvors were employed by him or not. The subsequent reception of the property has enured to the benefit of the carriers; the act of the salvors is ratified; and an obligation is consequently imposed, to pay such sum as may be agreed on, or, if no agreement for a specific sum be made, then a fair equivalent for the services that have been rendered. *Parsons on Contracts*, 44 *to* 46.

If, then, the masters and owners of the boat are liable, can the claim of the salvors, with which they are chargeable, be sustained against the boat?

The language of the statute, we apprehend, may well be extended to embrace a case like the present. It provides that the boat shall be liable for "debts contracted on account thereof by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor, in the building, repairing, furnishing, or equipping the same."

In 11 *Ohio* 458, Canal Boat Huron *vs.* Simmons, the Court say: "the *boat* is substituted for the *owners*, and in those cases where they would be liable, the *boat* may be held." The object of the statute was, to give a remedy, where they, (the owners,) were absent, or could not readily be found, and where, if the boat could not be directly reached, the claim would be of little value. In this case, under the terms "furnishing the boat," the law was held to include provisions for the use of the boat.

In 12 *Ohio* 341, Lewis *vs.* Schooner Cleveland, the

decision last quoted was affirmed, and the statute further extended to claims for wages, by the employees of the boat.

In 18 *Ohio* 201, Webster *vs.* The Brig Andes, the question was again decided, and although Judge Hitchcock dissented upon one point there decided, he approved the construction of the law given in the cases just quoted.

It is difficult to distinguish between a claim for services rendered in saving property lost, or thrown overboard, from a boat, and afterwards returned by the salvors to the boat, and those rendered on board the boat itself. Both are equally for the benefit of the owners, and in the present case for the preservation of freight, which, if lost, the boat would have been liable for, in this form of action. The claim in this suit, is therefore held to come within the meaning of the statute, so far as the remedy is concerned.

It is contended, that if the plaintiff can recover, he is entitled to a larger sum for his services, than the amount the parties agreed to receive, on the delivery of the property to the boat. This question involves another: Can the salvors repudiate their agreement, and if so, on what grounds?

No fraud, or imposition, is proved, to authorize its rejection; but, it is objected that the property was about to be replevied, and that the salvors could do no better than accede to the arrangement proposed by the Captain. They were coerced, therefore, into the settlement, and ought not to be held to its terms   The force of this suggestion, is not apprehended by the Court. No compulsion, no duress, within the meaning of the law, was proved. The parties appear to have acted with a full understanding of their rights, and to have properly estimated the value

of their services. Whatever lien they had acquired, might have been asserted in the replevin suit, if that process had been permitted to take its course.

We must therefore hold the parties to their contract, and cannot, in justice, on the testimony before us, allow any other, or further claim, than that which was agreed on, when the property was received by the boat.

If no special contract had been proved, we should not feel justified to allow any such sum to the salvors, as they now claim. The property saved was found in comparatively shoal water, where the only immediate difficulty to encounter was the running ice, and the cold weather. There were no such extraordinary perils, as would try the skill and courage of the mariner on the ocean; no such self-sacrifice as is to be found in the many reported cases, where salvage has been decreed to the value of a moiety of the property saved. On the contrary, it was but an ordinary undertaking of a number of persons, to save, under the hope of reward, property, that would have been saved in a short time by the carriers themselves.

The case presents no peculiar circumstances for a very liberal allowance, and all that could have been adjudged, would have been a fair compensation.

But, there is another view of the case to be considered, which we would, if possible, reconcile with a judgment for the plaintiff, on the pleadings, as they are now presented.

The action is brought by one of five joint contractors, made so, by the agreement that bound the Captain and owners to pay a specified sum to all, not to each; a sum, that could not *then*, and cannot *now* be apportioned, except by the joint consent of the salvors.

The labor bestowed was jointly contributed, the work

itself was a joint undertaking ; and the interest therefore was joint. If a note had been given to all, neither could sue for his portion; and this agreement, though proved by parol, must be governed by the same rule. We are led to the conclusion, therefore, that all the parties claiming under this agreement, should have joined in this suit; and neither can sustain an action for his undivided portion. We should have been better pleased could we have sustained this action.

The parties are entitled to remuneration for their labor, and should long since have been paid; and it is a subject of regret that the costs of the suits pending will consume a great part of the amount the salvors are, in any event, entitled to recover.

The law permitting amendments, in force when the suit was brought, is liberal in its terms ; and allows to the Court very large discretion, in shaping the pleadings, to subserve the ends of justice. To effect that object, the declaration in this case, if the plaintiff desires it, may be amended, by making all the salvors parties, as plaintiffs ; and judgment will then be rendered for the plaintiffs for one hundred dollars, and costs of this suit only. The costs of the amendment, and the costs of the four other suits will be paid by the plaintiffs in each case, and their suits must be discontinued.

THORPE, for Plaintiff.

LINCOLN, for Defendant.