Corn, J.
This case was appealed to this court from a judgment of a justice of the peace of this county, and while it involves a small amount in dollars and cents it raises a question, which so far as I have been able to ascertain, has not been decided in any reported case by any court in Ohio. The petition alleges a cause of action for work and labor performed and expenses incurred by plaintiff in raising and taking care of sunken timber which defendant took from plaintiff and it is alleged that such work was reasonably worth the sum of $10.50.
The answer admits that plaintiff raised certain logs of the defendant, but denies all other allegations. A jury was waived and the cause sumitted to the court upon an agreed statement of facts. So much of the agreed statement of facts as is necessary to a determination of the question involved is in substance as follows:
“Long prior to the time set out in the petition the defendants’ logs being conveyed by raft down the Ohio river past Ironton were lost to the number of seven; that they were of the value of about $300, and that they sank to the bottom of the river at di.f *269 ferent points opposite the city of Ironton and at a place where neither plaintiff nor defendant had any boom or arrangement to catch, hold, or care for said logs. They were what is known as ‘sinkers’ and sank to the bottom of the river beyond low water mark, and the whereabouts of either or any of said logs was not known to either plaintiff or defendant; that the plaintiff when the Ohio river was very low being engaged for other persons in that business found the seven logs in question imbedded in the mud in the bottom of the river, raised them to the surface, brought them to the shore, and fastened them to the Ohio bank of said river and cared for and had possession of the same until the defendant without the knowledge of plaintiff took possession of and took said logs away.
“The defendant made tender of $3.50, claiming the statutory fee of fifty cents per log governed and that plaintiff could not demand a greater sum. Plaintiff refused to accept the tender and claimed a reasonable compensation for said services, alleging such reasonable compensation to be a dollar and fifty cents per log, which amount he was receiving from other lumber men for similar services. It is also agreed that plaintiff had no contract or agreement with the defendant to raise any log or logs. ’ ’
Upon this statement of facts the cause was submitted to the court upon the two contentions, namely: that by the defendant, that plaintiff could not recover beyond the statutory compensation which was tendered him; and that by the plaintiff, that he is entitled to a reasonable compensation.
The agreed statement of facts shows these logs to have been lost but not abandoned; that they were “sinkers” and imbedded in the mud at the bottom of the Ohio river, and that neither plaintiff nor defendant know of their whereabouts or location. This statement is material as reflecting upon the important question in the case whether the statute of Ohio relating to the taking up of timber found adrift on the Ohio river applies, and in my judgment the case turns upon the meaning of the word “adrift.”
There are two sections of the statute governing property adrift on the Ohio river.
Section 4364-60 provides in substance that every person who shall take up and secure any saw logs, the property of another, found adrift in the Ohio river shall be entitled to receive from the owner thereof a compensation of twenty-five cents per log, and, if kept more than thirty days fifty cents per log, and that he shall have a lien upon said property so taken up for his *270 charges. This section applies to everything designated therein found adrift on the Ohio river and taken up.
Section 6639 covers all articles and property not included in Section 4364-60, and provides a reasonable compensation to be paid the taker up of. such property, but the taker up has no lien on the property included in the provisions of Section 6639 for his charges.
This is in harmony with a decision of our circuit court in the case of Ironton Cross Tie Company v. Frazer. At that time Section 4364-60 did not cover rafts or pieces of rafts. Frazer had found a piece of a raft belonging to the Ironton Tie Company going adrift on the Ohio river, and took it up claiming the statutory price per log and a lien upon the property until the same was paid. The Cross Tie Company tendered what it considered a reasonable compensation under Section 6639, which was refused. An action in replevin was instituted for said piece of raft and the circuit court sustained the contention of the Cross Tie Company. Since that time Section 4364-60, at the instance and request of timber dealers, was amended so as to fix the price on practically everything that goes adrift on the Ohio river, and it will be observed that both sections under consideration provide that the property must have been going or gone adrift upon the Ohio river, or the rivers and creeks within the state. In this case, as before stated, much depends upon whether these logs in question were “adrift” on the Ohio river. The only judicial definition of the word adrift I have been able to find is that in 2 Allen (Mass.), at page 549, as follows:
“Sea-weed at high and low water mark which-has not been deposited on the shore and which during flood tide is moved by each rising and receding wave is adrift within the meaning of the statute, although the bottom of the mass may touch the beach. ’ ’
This case arose upon the question of ownership of certain .sea-weed and it is held that these marine products do not become the property of the riparian owner until they are cast on the land or shore so that they rest there; so long as they, are afloat and driven or move from place to place by the rising tide it is wholly uncertain where they may find a resting place.
The logs in question had found a resting place, were, not *271 afloat, and did not move from place to place by the action of the water; so that under this definition the logs in question were not adrift.
Webster defines “adrift” as “floating at random; in'a drifting condition.” Under this statement of facts it can not be said these logs were floating at random or floating at all. The statement says they were lost, imbedded in the mud at the bottom of the Ohio river, and neither plaintiff nor defendant knew of their location. They were therefore not adrift, not floating; consequently they come within the law with reference to lost property, and the finder is governed for his compensation by the rule providing compensation for lost property, which rule—and especially as to property lost upon land—is that the finder is entitled to recover such reasonable expenses as have been incurred and as are nesessary in the recovery and preservation of the property.
' Some light may be shown on this question in the case of Wyman v. Hulbert, 12 Ohio, 82, 87, and in the case of Coverlee v. Warner, 19 Ohio, 29.
Under the doctrine of salvage, the salvors of property are allowed a compensation in proportion to the peril encountered, the skill exerted, and the time spent in the work in recovering and preserving the property; it is not a per cliem allowance, but it is determined by a liberal discretion of the court, not only as a reward for courage in the hour of danger, but as an incentive for the preservation of the property in imminent danger. Boyd v. Steamboat Falcon, 1 Handy, 364.
In the Coverlee case, 19 Ohio, 29, it is held, with reference to property floating on the Ohio river, that the taker up has no greater privilege than he may claim who, finding property which had been lost, takes care of it and secures it for the owner. Swan’s Treatise, at page 639, holds that the'finder of goods has no lien thereon but may recover by suit a reasonable amount for his trouble and expenses.
An interesting case, and one almost in point, is that of Murphy v. Dunham, 38 Federal Reporter, 503; it is held among other things that:
“The title of the owner to property lying at the bottom of the sea is not divested however long it may remain there, and *272 no other person can acquire such title except by a condemnation and sale in admiralty. ’ ’
And further:
“A cargo of coal lying at the bottom of Lake Michigan was raised by the owners of the vessel acting under the advice of counsel after notice by the owner of the coal of his claim of title, and was disposed of in Chicago at' private sale. Held: That the owner of the cargo was entitled to recover its value less the necessary expenses of raising it and carrying it ashore by the most approved appliances for that purpose.”
If the plaintiff in this case had sold the logs in question, under the last authority, Cole, Crane & Company would be entitled to recover from the plaintiff the value of the logs less the necessary expenses of raising the logs and carrying them ashore and taking care of them. Not having sold the logs, but the defendant having taken them from the possession of plaintiff, the plaintiff is entitled to recover for the necessary expenses of raising the' logs, carrying them ashore and taking care of them.
There is an averment in the answer that plaintiff raised these logs without the knowledge or consent of the defendant. It is held in 1 Handy, 365, that it is immaterial whether the work in saving property is performed at the request of the captain or whether the salvors were employed by him or not; and in the ease of Reeder v. Anderson’s Administrators, 4 Dana (Ky.), 193, when a man loses a piece of property there is an implied request from him to everybody else to aid him in recovering it; and anyone who finds and restores it may recover upon an implied assumpsit at least an indemnity for his time and expenses.
For the foregoing reasons and upon the authorities quoted, I am of the opinion that, the contention of' the plaintiff that he is entitled to a reasonable compensation and not limited to the statutory fee is well founded. There is no direct statement in the agreed statement of facts what would be a reasonable compensation, but it appears from the statement that other timber dealers and lumber men were paying plaintiff one dollar and fifty cents per log for similar services, and from this the court may fairly find that one dollar and fifty cents per log is a reasonable compensation and the finding will therefore be for the plaintiff for $10.50.